HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

3BA INTERNATIONAL LLC,

    Plaintiff,

v.

KEVIN LUBAHN, et al.,

    Defendants.

CASE NO. C10-829RAJ

TEMPORARY RESTRAINING ORDER

## I.  INTRODUCTION

This matter comes before the court on the ex parte motion (Dkt. # 8) of Plaintiff 3BA International LLC ("3BA") for a temporary restraining order.  For the reasons stated below, the court GRANTS the motion and enters a TRO with terms as stated at the conclusion of this order.  Because this order "grant[s] or den[ies] an interlocutory injunction," findings and fact and conclusions of law are required.  Fed. R. Civ. P. 52(a)(2).  The court's findings and conclusions are included in this order, which serves as a memorandum of the court's decision.  Fed. R. Civ. P. 52(a)(1) (permitting findings and conclusions to be contained within "an opinion or a memorandum of decision filed by the court"); *see also FTC v. H. N. Singer, Inc.*, 668 F.2d 1107, 1109 (9th Cir. 1982) (noting that explicit factual findings are unnecessary).

ORDER – 1

## II. BACKGROUND

3BA is a fledgling professional three-on-three basketball league. So far as the court is aware, 3BA does not yet have teams, but has several franchises "under contract" and is in negotiations to add more franchises. Claunch Decl. ¶ 2.

Defendant Kevin Lubahn "is one of the original founders of the 3BA game and originally developed and owned some of the 3BA game intellectual property." Claunch Decl. ¶ 4. In September 2008, Larry Claunch purchased all 3BA intellectual property from Mr. Lubahn's bankruptcy estate. The sale is memorialized by both a bankruptcy court order approving the sale and an asset purchase agreement. Claunch Decl., Exs. A-B. The intellectual property included copyrights in the 3BA logo and game rules, two registered 3BA trademarks, and three 3BA internet domain names. Claunch Decl., Ex. B (Ex. A to asset purchase agreement); *see also* Chen Decl. ¶¶ 4-6 (reviewing ownership of 3BA intellectual property). Mr. Claunch hired Mr. Lubahn and Defendant Kevin Ellis as "Executive Board Members" of 3BA. Claunch Decl. ¶ 9. Both were supposed to work to develop new 3BA franchises, to solicit potential investors, and to develop 3BA operational strategies. *Id.*

Evidence demonstrates that Mr. Ellis and Mr. Lubahn at some point began making their own plans to form a three-on-three basketball league to supplant 3BA. That evidence includes minutes of several April 2010 conference calls or meetings in which they memorialized their plans. 3BA obtained these minutes by searching the 3BA e-mail accounts of Mr. Ellis and Mr. Lubahn. For example, minutes of an April 23 conference call contain a comprehensive plan to create competing companies and to develop a schedule for exhibition games for the competing league.[1] Claunch Decl., Ex. C. The minutes noted the need to decide "when to drop the bomb on 3BA International," the need to "speak to all people who you feel confidant [sic] will come with us during our

---

[1] Although the court often refers to the "competing" league or enterprise that Defendants worked to establish, the evidence suggests that they did not merely intend to compete with 3BA, but to essentially insert their enterprise in 3BA's place.

ORDER – 2

break (athletes, coaches, etc.)." *Id.* The minutes also noted that 3BA planned an April 30 meeting in Dallas with a potential franchise investor in an "attempt to sell equity into 3BA International." *Id.* The minutes revealed that Mr. Lubahn and Mr. Ellis intended to persuade the investor, Lewis Hill, not to finalize his contract with 3BA. *Id.* Mr. Lubahn, Mr. Ellis, and four other 3BA employees planned to submit their resignations shortly after undermining the Hill contract. *Id.* Minutes for an April 26, 2010 conference call are consistent with the April 23 minutes. Defendants continued their plans to create new corporations and a competing business. *Id.* Defendants created a "2010-2011 (18 Month) Timeline" for their league, with operations commencing in May 2010. Claunch Decl., Ex. E. The minutes and the documents reference therein use a 3BA logo that is either identical to or substantially identical to a 3BA registered trademark.

True to their plans, Defendants met with Mr. Hill and successfully persuaded him not to enter a contract with 3BA. Claunch Decl. ¶¶ 12-13. Brenda Ford, a 3BA vice president, spoke with Mr. Hill shortly before her planned April 30 meeting with him. Ford Decl. ¶ 3. Mr. Hill informed her that Mr. Lubahn had contacted him, asserted ownership of all of 3BA's intellectual property, and told him not to invest in 3BA. *Id.* ¶ 4. 3BA's negotiations with Mr. Hill had been ongoing since February 2010, and had progressed to the point that he signed a detailed memorandum of understanding for his purchase of a franchise. *Id.* ¶¶ 3, 8, Ex. A; Merritt Decl. ¶ 3. Mr. Lubahn's contacts were apparently not limited to Mr. Hill. Ms. Ford received a telephone call from an attorney representing Shawn Kemp, another potential franchisee, who said that Mr. Lubahn had contacted him and told him that 3BA and Mr. Claunch had "cheated him" to acquire 3BA intellectual property. *Id.* ¶ 7.

On April 28, Mr. Lubahn sent an e-mail to a 3BA attorney expressing his dissatisfaction with 3BA. Merritt Decl. ¶ 7, Ex. A. Among other things, he denied that he had ever transferred 3BA trademarks to Mr. Claunch and contended the "the logo, the game, [and] the business model" were "legally and rightfully" his property. *Id.*

ORDER – 3

3BA employees discovered Mr. Lubahn's plans and terminated him on April 29, removing him as a co-manager of 3BA. Claunch Decl. ¶ 15, Ex. D. Despite 3BA's demands, Mr. Lubahn has not returned a 3BA laptop computer, Blackberry mobile device, and 3BA's signed February 2010 memorandum of understanding from Mr. Hill. Ford Decl. ¶ 8; Claunch Decl. ¶¶ 20-21. The laptop contains numerous proprietary 3BA documents. Claunch Decl. ¶ 20. Mr. Lubahn has also retained possession of a 3BA vehicle. *Id.* For reasons not apparent from the record, 3BA did not discharge Mr. Ellis until May 18. Merritt Decl. ¶ 10. Like Mr. Lubahn, he retained a 3BA laptop and a Blackberry mobile device. Claunch Decl. ¶ 20.

Freed from the strictures of pretending to serve 3BA, Mr. Lubahn took more drastic steps. He used 3BA passwords to take over 3BA's website and its e-mail system. Ford Decl. ¶ 5; Claunch Decl. ¶ 16. On April 30, Mr. Lubahn purchased or extended domain name registrations for 3BA.net, 3BA.com, and 3BA.org, the same domain names he sold to Mr. Claunch in the asset purchase agreement. Claunch Decl., Ex. G. Only after an attorney contacted Mr. Lubahn did he reveal the passwords he changed and return control of the website and e-mail system to 3BA. Chen Decl. ¶¶ 7-8. He also has continued to target potential 3BA investors. Mr. Hill and Billy Joe Dupree, another person involved with the potential Dallas franchise, stated that Mr. Lubahn had contacted them on May 4 and claimed ownership of 3BA's intellectual property. Merritt Decl. ¶ 9. Both Mr. Hill and Mr. Dupree stated to 3BA employees that they were unwilling to invest in 3BA in light of Mr. Lubahn's allegations. *Id.*

3BA filed this suit on May 18 against Mr. Lubahn, Mr. Ellis, and 3BA Properties, LLC, a Washington limited liability company that Mr. Lubahn incorporated on April 26, 2010. Reynvaan Decl. ¶ 3, Ex. A. Among 3BA's eleven causes of action are four federal statutory claims, which are the basis for this court's jurisdiction.

On May 19, 3BA brought the instant motion for a temporary restraining order. It seeks an order barring Defendants from soliciting 3BA's investors or potential investors,

ORDER – 4

1  from using documents or information acquired from 3BA, from hiring 3BA employees,
2  from contending that they own 3BA intellectual property, and from establishing a
3  competing basketball league.  3BA brought the motion ex parte, although it has provided
4  a declaration establishing its efforts to serve Mr. Ellis and Mr. Lubahn with the complaint
5  and motion for TRO.  Dkt. # 9.  In summary, 3BA has made efforts to provide electronic
6  notice of this suit and its motion to both Mr. Ellis and Mr. Lubahn, although the court
7  cannot be certain that they have received it.  3BA has not accomplished formal service,
8  although it is attempting to do so.

### III.  ANALYSIS

To win preliminary injunctive relief, 3BA must "establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."  *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008).[2]  The standard for a temporary restraining order is substantially the same. *ProtectMarriage.com - Yes on 8 v. Courage Campaign*, 680 F. Supp. 2d 1225, 1228 (E.D. Cal. 2010) (citing *Winter*); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical").

The Federal Rules of Civil Procedure establish that an ex parte temporary restraining order is appropriate only in narrow circumstances:

(A)  [where the movant establishes] specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B)  the movant's attorney certifies in writing any efforts made to give the notice and the reasons why it should not be required.

---

[2] 3BA relies on a standard for granting injunctive relief that the Supreme Court rejected in *Winter*.  *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126-27 (9th Cir. 2009).

ORDER – 5

Fed. R. Civ. P. 65(b)(1). As the court has noted, 3BA has attempted to give notice to Defendants. *Id.* (noting that "written or oral notice to the adverse party or its attorney" can suffice). Without better evidence that Defendants have received notice, the court will treat this motion as a request for an ex parte temporary restraining order.

In considering 3BA's motion, the court emphasizes that it has not heard Defendants' side of the story. Some of 3BA's statements in the declarations of its employees and attorneys may be one-sided.[3] What is not one-sided, however, is the evidence 3BA presents that is authored by Defendants themselves. The minutes of conference calls involving Mr. Ellis and Mr. Lubahn, which were prepared by Defendants or their associates, are compelling evidence. Those minutes, the documents referenced in those minutes, and Defendants' e-mail communications are the primary evidence on which this court bases this order.

The court need not examine 3BA's likelihood of success on all of its claims, but rather only those claims sufficient to justify the injunctive relief sought. The court therefore focuses on 3BA's claim for tortious interference with business expectancies. That claim requires 3BA to prove the following elements:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Leingang v. Pierce County Medical Bureau*, 930 P.2d 288, 300 (Wash. 1997).

On the record before the court, 3BA is likely to succeed on its tortious interference claim. 3BA has pointed to at least two specific business expectancies: the expectancy

---

[3] Indeed, the court has declined to recount some allegations against Defendants that are supported by nothing more than 3BA's employees' declarations. One such allegation, for example, is that Defendants accessed 3BA's e-mail system to cause all e-mail directed to other 3BA employees to be secretly forwarded to Defendants. Ford Decl. ¶ 6. The court makes no finding as to the truth of this allegation, but notes that 3BA submitted no objective evidence to corroborate it.

ORDER – 6

that it would enter a franchise contract with Mr. Hill, and its expectancy that it would enter a franchise contract with Mr. Kemp. It is apparent that Defendants were aware of these expectancies, and are no doubt aware of most if not all of 3BA's other business expectancies. There is substantial evidence that Defendants intentionally interfered with those expectancies and that they will continue to interfere with those expectancies and others. Most importantly, there is ample evidence that they used improper means to do so. Those improper means include the use of intellectual property that belongs to 3BA,[4] the use of information and documents acquired while working at 3BA in a fiduciary capacity, and the misappropriation of 3BA property (including laptop computers and 3BA documents contained therein). Finally, there is evidence that Defendants' interference has damaged 3BA by making prospective investors and franchisees unwilling to commit to the league.

3BA has also shown that it is likely to suffer irreparable harm absent injunctive relief. Defendants' actions threaten to paralyze if not destroy 3BA. A fledgling business enterprise is unlikely to withstand a wholesale assault made by its former fiduciaries who seem to be plotting not merely a competing enterprise, but an enterprise that will use 3BA's business contacts to supplant it. The evidence suggests that absent an injunction, Defendants will continue to interfere with 3BA business expectancies and use improper means to do so.

The balance of equities favors 3BA as well. The court and the law favor fair competition among competing business enterprises. The evidence before the court shows that Defendants are not interested in fair competition, and there is no reason to expect that they will compete fairly absent injunctive relief.

---

[4] Based on the asset purchase agreement, 3BA is likely to succeed in proving that it owns the intellectual property in question.

ORDER – 7

The public interest in this dispute favors 3BA, if only slightly. The court has no idea what interest the public has in professional three-on-three basketball, but the public interest in fair competition weighs in favor of 3BA.

Finally, the court finds that in light of the evidence presented, the court finds it necessary to issue this order without notice to Defendants. In the time necessary to notify Defendants (who appear to be actively evading service), there is every indication that they will continue the unlawful conduct described above. The temporary restraining order set forth below provides Defendants with an expeditious means to present their side of the story and potentially convince the court to modify or vacate the TRO.

## IV.   TEMPORARY RESTRAINING ORDER

For the reasons stated above, the court GRANTS 3BA's ex parte motion and enters the following temporary restraining order. The court has crafted the temporary restraining order with an eye toward not only preventing Defendants' further interference in 3BA's business expectancies, but also toward preventing Defendants from employing the improper means that they have used to interfere in the past.

Effective upon posting a $5000 bond or equivalent security with the court, and upon service of this order, Defendants Kevin Lubahn and Kevin Ellis, including any persons or corporate entities[5] under their control, are enjoined from the following acts:

1) Soliciting or contacting (or assisting others in soliciting or contacting) any known or potential 3BA investor or franchisee for direct or indirect support for Defendants' competing basketball enterprise;

2) Using, divulging, disclosing, or transmitting for any purpose any document or record acquired from 3BA;

---

[5] In light of the terms of this temporary restraining order, the court finds no need at this time to restrain Defendant 3BA Properties, LLC. The injunction against Defendants and corporate entities under their control suffices to prevent the use of the limited liability company as an instrument of harm.

ORDER – 8

3) Using any graphic or symbol that is identical to or confusingly similar to the trademarks 3BA acquired in the asset purchase agreement;

4) Claiming an ownership interest in 3BA intellectual property, documents, or business plans; and

5) Accessing or attempting to access 3BA's password-protected electronic mail systems or internet website.

In addition, Defendants Kevin Lubahn and Kevin Ellis must cease the use of any laptop computers or mobile devices acquired from 3BA. They shall not modify or dispose of the laptop computers absent 3BA's written agreement or an order of this court.

Nothing in this order is intended to prevent Defendants from engaging in lawful business practices, including lawful competition with 3BA. Because Defendants' practices to date give the court reason to suspect that their view of "lawful" competition does not comport with the law, the court orders that in any business contact related to their competing enterprise, Defendants must provide that business contact with a copy of this temporary restraining order.

The temporary restraining order will become effective upon formal service of this order on Defendants.

The court sets a hearing for June 3, 2010 at 1:30 p.m., at which Defendants shall show cause why the court should not convert this temporary restraining order to a preliminary injunction. Defendants, at their option, may enter their appearances in this matter and contact the court to request an earlier hearing. The court will grant a hearing as soon as practicable should Defendants request it. Put simply, if Defendants wish to air their side of the story, they need only accede to service and contact the court.

DATED this 20th day of May, 2010.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER – 9